Argued and submitted March 11, affirmed in part; reversed in part May 18, reconsideration granted, former opinion adhered to as modified (52 Or App 1023, 630 P2d 895) June 29, petition for review denied October 28, 1981 (291 Or 368)

In the Matter of the Compensation of
Robert DeGraff, Claimant.

## J. C. COMPTON COMPANY,
*Petitioner,*

*v.*

## DeGRAFF et al,
*Respondents.*

(WCB No. 78-7405 & 78-9173, CA 19196)

628 P2d 437

David O. Horne, Beaverton, argued the cause and filed the brief for petitioner.

Rolf T. Olson, Salem, argued the cause for respondent Robert DeGraff. With him on the brief was Olson, Hittle, Gardner & Evans, Salem.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent State Accident Insurance Fund Corporation. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

The first issue in this appeal from the Workers' Compensation Board is whether claimant's injury is compensable as an aggravation, as the referee found, or as a new injury, as the Board found. The resolution of that question determines which of two insurers, SAIF or Employers' Mutual of Wausau ("Wausau"), is the responsible carrier.

Claimant first injured his back in 1975 and as a result underwent a lumbar laminectomy. His claim was closed in 1976 with an unscheduled disability award of 10 percent for injury to his low back. In 1976 he was awarded an additional 10 percent by stipulation. The following additional facts are taken from the referee's opinion.

"The claimant returned to work in June of 1976 for J. C. Compton Co. working continuously for that employer until August 4, 1978. During this period, the claimant was doing general road construction work which included the operation of various types of road building related machinery, trucks and equipment. This type of work is generally considered as moderate to severe physical labor.

"Between June of 1976 and July of 1978, the claimant did not receive any medical treatment, did not take any medication, to speak of, for pain in his back and worked without any significant loss of time due to his 1975 back injury and resulting operation.

"Some time in the beginning of July of 1978, claimant was required, as part of his job with J. C. Compton Co., to shovel asphalt out of the back of a truck having to lift it over the side of the truck at approximately shoulder height. During this event, claimant noted more significant pain in his lower back and left hip but continued working for that employer until August 4, 1978."

Whether claimant suffered an aggravation or new injury is determined by the medical evidence, but medical evidence ofttimes is in terms susceptible of either interpretation, at least to the parties involved. That is the case here.

There were four doctors involved in the examination, evaluation and treatment of claimant. However, only Dr. Coletti, an orthopedic surgeon who examined claimant for the purpose of evaluation, expressed clearly that in his

opinion "this is [claimant's] second injury, unrelated to the first, for its symptoms and location are completely different and the patient had a two year period in which he had no medical care for the previous problem." The statements of Dr. Fax, Dr. McKillop and Dr. Pasquesi are susceptible of either interpretation, and each party relies on certain parts of the doctors' statements as support for their respective positions.

Dr. Fax performed the operation on claimant in 1975, and claimant went first to Dr. Fax with his more recent physical problem. Dr. Fax reported in the "off-work slip" that claimant "will be off work for at least two weeks due to flare-up of back problem." However, in the initial report of the injury, Dr. Fax diagnosed claimant's condition as "[d]egenerative disc disease with new injury to back." Dr. Fax also noted that the "pain this time is in his left leg rather than the right leg." In his report dated October 26, 1978, Dr. Fax recognized that "[t]here is apparently a question as to whether [claimant's] present difficulty is due to an aggravation of his previous low back injury * * * or whether his present difficulty is due to a new injury * * *." He then concluded that "no new injury occurred * * *. It would be my opinion that his present symptoms are due to a recurrence or aggravation of the previous problem dating back to his injury in 1975." However SAIF sent a memorandum to Dr. Fax on February 27, 1979, with the message, "We have received Dr. Coletti's report on [claimant] and are sending you a copy for your information. If you do not concur with his findings we would appreciate hearing from you." Dr. Fax replied, "I would agree with the physical findings and recommendations. I'll leave it up to the insurance companies to decide who is responsible for his coverage."

Dr. McKillop, an orthopedic surgeon, stated clearly and unequivocally that claimant's "present symptoms are due to a recurrence or aggravation of the previous problem" and that there is no indication "that a new and separate process has developed." However, Dr. McKillop had noted in his "chart notes" that claimant had had "good relief of symptoms" from his 1975 operation and that he had a "recent acute sprain to the lumbo sacral spine."

Dr. Pasquesi reported, "I believe that the * * * shoveling incident was the most proximate cause of the patient's need of treatment and lay-off of work, but at the same time, it aggravated a pre-existing condition. It would appear that the injury which this patient received * * * was probably also aggravating an area which had been injured on several previous occasions." Dr. Pasquesi also said he could only present the medical facts and stated "the legal facts, I cannot comment on."

As the referee's opinion points out, "[t]he medical opinions * * * do not help in the resolution of the issue of aggravation versus new injury because they are conflicting and contradictory. This is due primarily to the fact that the medical definitions of aggravation versus new injury do not necessarily fit the legal definition as identified in the applicable law * * *." With that observation in mind we conclude, in our *de novo* review, that claimant suffered an aggravation of his old injury.

The various doctors' references to "new injury," "recent acute sprain," and "proximate cause" must be taken in context with their entire statements. After using these terms, three doctors, Dr. Fax, Dr. McKillop and Dr. Pasquesi, also stated "no new injury occurred," "no indication that a new and separate process has developed," the shoveling "aggravated a pre-existing condition" and that claimant's "present symptoms are due to a recurrence or aggravation." SAIF argues that Dr. Fax's statement that he agreed with Dr. Colletti's "findings and recommendations" means that he agrees with Dr. Colletti that claimant suffered a new injury. We do not believe that an agreement on what claimant's medical condition is and what his treatment should be gives any information on whether this is a new injury or an aggravation. The statements made by the doctors who said that this was an aggravation carry the greater weight and are, therefore, dispositive of this case. We note also that claimant's testimony regarding his experiences after the first injury supports this conclusion.[1]

---

[1] The referee's opinion summarized claimant's testimony as follows:

"* * * the claimant claims that he had spotty pain in his back of a non-continuous nature with which he learned to live as part of his daily activity and job requirements. During this same period, claimant asserts that his

We find, therefore, that claimant has suffered an aggravation of his old injury and reverse the Board's decision.

■ Another issue raised in this case is whether a disputed claim settlement entered into by Wausau and claimant under ORS 656.289(4)[2] is valid. It was entered into after an order was issued under ORS 656.307[3] designating one of the insurance companies to be the paying agent until the question of new injury or aggravation had been resolved. If it is valid, the disposition we make of the aggravation/new injury claim in this case will have the effect of claimant receiving payments from both carriers. The referee held the settlement was valid, but the Board held it to be invalid. We agree with the Board.

SAIF was designated the paying agent; claimant then entered into a disputed claim settlement with Wausau. SAIF argued at the hearing that it was prejudiced by the settlement because claimant would be biased as to the presentation of his evidence. The referee held the settlement valid because he found that "within the four corners of the document itself, sufficient allegations of a disputable claim of compensability are present and there is a disposition made on a reasonable basis." He concluded,

activities were restricted specifically in lifting, bending and other types of activities which tended to cause pain and irritate the back. Where possible, claimant avoided lifting. Claimant also asserts that his back gradually became worse over this period."

[2] ORS 656.289(4) provides:

"Nothwithstanding ORS 656.236, in any case where there is a bona fide dispute over compensability of a claim, the parties may, with the approval of a referee, the board or the court, by agreement make such disposition of the claim as is considered reasonable."

[3] ORS 656.307(1)(b) provides:

"(1) Where there is an issue regarding:

"(b) Which of more than one insurer of a certain employer is responsible for payment of compensation to a worker;

"the director shall, by order, designate who shall pay the claim, if the claim is otherwise compensable. Payments shall begin in any event as provided in subsection (4) of ORS 656.262. When a determination of the responsible paying party has been made, the director shall direct any necessary monetary adjustment between the parties involved. Any failure to obtain reimbursement from an insurer or self-insured employer shall be recovered from the Administrative Fund."

however, that it was valid "unless ORS 656.307 contemplates disputed claim settlements to be void ab initio for purposes of adjudicating claims in the context of this section."

The Board, however, concluded that "to allow one of the carriers to settle its portion of the claim prior to the hearing would be unjust," and it then specifically found that any settlements entered into by one carrier and a claimant settling the issue of responsiblity for claimant's condition between them, after an order is issued under ORS 656.307, is invalid. We agree with the Board that such a situation has all the potential for creating prejudice.[4] It may also encourage a claimant to gamble on which insurer is responsible in the hope that he might recover twice if he is lucky. To hold the settlement valid in this case would allow claimant to be paid twice for the same disability. We do not believe the legislature intended that result. We hold that where there is a dispute as to which insurer is responsible for a claimant's injury or condition any settlment entered into by one of the insurers and the claimant on the issue of responsibility after an order under ORS 656.307 has been issued is invalid.

Affirmed in part; reversed in part.

---

[4] We have considered SAIF's argument that the settlement itself could have influenced claimant to be more favorable to the insurer who had settled, and we have kept that in mind in weighing claimant's testimony on the issue of aggravation or new injury.